IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JADA V. VISE,

    Plaintiff,

v.                                   Case No: 3:19cv101-NBB-RP

**JURY DEMAND**

MGM RESORTS MISSISSIPPI, LLC
D/B/A GOLDSTRIKE CASINO AND RESORT
and JOAQUIN GARCIA,

    Defendants.

## COMPLAINT

COMES NOW, the Plaintiff, Jada V. Vise, by and through undersigned counsel and for cause of action against the Defendants would respectfully show the following:

### I. PARTIES

1. Plaintiff, Jada V. Vise, is an adult resident of Hendersonville, Tennessee.

2. The Defendant MGM Resorts Mississippi, LLC ("MGM") is a Mississippi limited liability company owning real property and doing business within in the Northern District of Mississippi. MGM may be served with process through its registered agent, Anthony Del Vescovo, at 875 Beach Boulevard, Biloxi, Mississippi 39530.

3. Defendant, Joaquin Garcia, is an adult non-resident of Mississippi

who, upon information and belief, is employed by MGM and domiciled within the Commonwealth of Virginia.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction to hear this Complaint under 28 U.S.C. § 1332(a).

5. This Court provides proper venue for the adjudication of this Complaint, pursuant to 28 U.S.C. § 1391(b)(2), because the events which form the basis of the causes stated herein occurred within the territorial boundaries of the Oxford Division of the Northern District of Mississippi.

## III. ALLEGATIONS OF FACT

6. MGM owns and operates the Goldstrike Casino and Resort (the "Casino"), which is located at 1010 Casino Center Drive, Robinsonville, Mississippi 38664.

7. At all pertinent times, Vise was a regular guest at the Casino, and well known to Casino staff and MGM management, particularly, Michael "Mav" Mavromatis, Goldstrike's Executive Director of Player Development, as a high-stakes blackjack and slot player.

8. MGM, to encourage Vise to gamble at Goldstrike (and at its sister Casino, Beau Rivage Resorts), extended tens of thousands of dollars in credit ("Markers" and "Free Play") to Ms. Vise.

9. At all pertinent times, Garcia was employed by MGM at the Goldstrike Casino.

10. Upon specific information and belief, Garcia had been fired from his

previous job for sexual harassment, sexual assault, or both. MGM either knew of this or upon reasonable due diligence should have known.

11. On July 21, 2018, Garcia told Vise he was moving to work at MGM's National Harbor in Maryland.

12. On or about July 22, 2018, while Vise was sitting at the blackjack table at Goldstrike, Garcia approached her, put his arms around her, and without and against Vise's consent, deliberately rubbed his hand across her breasts in a sexual manner.

13. While embracing Vise on July 23, 2018, Garcia deliberately, and without and against Vise's consent, rested his hand on her buttocks in a sexual manner.

14. Vise was shocked and upset and advised Mavromatis of Garcia's actions and her concerns.

15. On the morning of August 4th, 2018, Vise was present on the floor of the Casino standing by the slot machines waiting to be paid for some jackpots, when Garcia again approached and physically accosted her from behind.

16. When Garcia accosted Vise on the floor of the Casino on August 4, 2018, without and against Vise's consent, Garcia deliberately shoved his hand in her front pocket and fondled her vagina in a sexual manner.

17. Vise immediately, repeatedly, firmly, and unequivocally rebuked Garcia for his outrageous conduct after he deliberately shoved his hand in her front pocket and fondled her vagina in a sexual manner.

18. Following this incident, Vise was outraged and loudly and repeatedly told Garcia not to touch her ever again.

19. On August 5, 2018, while Vise was speaking with a Casino employee, by the Host Desk, she was frightened to see Garcia, who had crept up on her from behind, and was standing inappropriately close to her deliberately leering at her legs and buttocks in an overtly lascivious manner.

20. When Vise turned to see Garcia behind her, the combination of Garcia's previous sexual conduct, physical proximity, and threatening demeanor put Vise in fear of imminent physical harm and of more unwanted sexual touching.

21. Vise's fear intensified when Garcia stepped forward and grabbed hold of Vise's hand, and although she jerked her hand away, Garcia grabbed her hand tighter.

22. The situation deescalated when two casino employees came from around the corner and intervened. Vise asked the men to tell Garcia to stop being a pervert!

23. Later the same day, August 5, Garcia approached Vise on the main floor of the Casino and in front of two of Vise's male friends, once again embraced her and deliberately squeezed her buttocks in a sexual manner.

24. Following these incidents, Vise began to ask around about Garcia's reputation, and learned that he was known by Casino staff, MGM management, and guests to have regularly engaged in inappropriate sexual touching and other harassment of Casino employees and guests.

25. Upon specific information and belief, MGM management knew of Garcia's reputation for sexual harassment, as well as specific instances of the same that had occurred at the Casino.

26. Vise complained about Garcia's actions and conduct to Mr. Mavromatis, with whom she had a special relationship.

27. After complaining of Garcia's conduct, MGM's attitude changed with respect to the credit it had extended to Vise and threatened to "call her Markers".

28. Numerous communications, both by telephone, in person, by email and text ensued between Vise and several representatives of MGM during the period of September to November, 2018 regarding the conduct of Garcia and Vise's agreement to pay off the Markers.

29. Vise and MGM agreed on payment schedule and on August 29, 2018, Vise delivered two (2) twenty-thousand dollar ($20,000.00) cashier's checks to MGM (one for Markers at Beau Rivage and one for Markers at Goldstrike) for the first installment due in September and MGM agreed to a repayment plan to pay the balance of Sixty-thousand dollars ($60,000.00) increments of $20,000 over the next three (3) months (October, November and December).

30. Although Vise was in continuous communication with Mavromatis, and other representatives of MGM, including Tina O'Keefe, Director of Risk Management for MGM's Gold Strike/ Beau Rivage Resorts, from August to November 2018, regarding her "Markers" and Vise's complaints and claims for Garcia's conduct and the failure of MGM to provide a safe environment and to

provide reasonable security for her, MGM consistently failed to take any remedial action or even apologize.

31. Therefore, on or about November 17, 2018, Ms. Tina O'Keefe was formally advised that Ms. Vise had retained counsel regarding her claims against MGM and Garcia.

32. Having no response from Ms. O'Keefe, on or about December 3, 2018, counsel for Vise advised General Counsel of MGM: "Since we have informed Ms. O'Keefe of our representation and the claims of Ms. Vise, the Casino has taken retaliatory actions against Ms. Vise regarding her "markers" and her "free play."

33. On or about December 5, 2018, MGM advised Ms. Vise that they had negotiated her markers at Goldstrike dated June 30, 2018 and June 29, 2018 in the respective amounts of $20,000 and $10,000 and by separate letter, also dated December 5, 2018, MGM advised Ms. Vise that they had negotiated her markers at Beau Rivage dated June 16, 2018 and June 17, 2018 in the respective amounts of $20,000 and $10,000, knowing full-well that the accounts the checks were written against had been closed.

34. Subsequently. MGM referred the above referenced markers to the Mississippi District Attorneys in Gulfport, Mississippi and Cleveland. Mississippi, for prosecution of Ms. Vise.

### IV. CAUSES OF ACTION

35. The facts and allegations contained in the preceding paragraphs are

hereby reiterated and incorporated by reference for each of the following counts.

### Count 1: Sexually-Based Battery

36. As described above, Garcia deliberately and repeatedly groped and assaulted Vise, in an overbearing, unwanted, and overtly sexual manner while an employee of MGM and on the premises of the Casino.

37. Garcia's deliberate sexual touching was highly offensive to Vise personally.

38. Garcia's deliberate sexual touching of Vise would be highly offensive to any person of reasonable dignity.

39. Garcia's deliberate sexual touching caused Vise to experience physical anxiety during and following the incidents.

### Count 2: Battery

40. Garcia grabbed hold of Vise on August 4, 2018, after sneaking up behind her in the high-limit slot area of the Goldstrike Casino.

41. Garcia's grabbing hold of Vise on the main casino floor was terrifying and offensive to her personally.

42. Garcia's grabbing hold of Vise on the main casino floor would be terrifying to any reasonable woman similarly situated to Vise and would be offensive to any person of reasonable dignity.

### Count 3: Sexually-Based Assault

43. When Garcia crept up behind Vise in the high-limit slot room, he caused her imminent fear of bodily injury and offensive sexual touching.

44. When he crept up on Vise and accosted her on the main casino floor, Garcia was intending to assault, harm, or grope her, or some combination thereof, or to put her in imminent fear of the same.

*Count 4:    Intentional Infliction of Emotional Distress*

45. Garcia's deliberate, offensive sexual touching was extreme, outrageous conduct, exceeding all possible bounds of decency.

46. Garcia's deliberately accosting Vise in the casino was extreme, outrageous conduct, exceeding all possible bounds of decency.

47. Vise suffered significant mental anguish and emotional distress as the result of Garcia's deliberate, offensive sexual touching, as well as his accosting her in the casino.

48. When Garcia engaged in the conduct covered under the preceding counts, he was employee of MGM.

49. Garcia engaged in this conduct while conducting the regular duties of his job at the Casino.

50. Upon information and belief, Garcia's pattern of sexual harassment was so frequent and pervasive that it was, in practice if not design, inextricable from his day-to-day job performance.

51. MGM management knew, or reasonably should have known, that Garcia was engaging in such behavior, and their failure to discipline or take other corrective action should be construed as an actual or constructive endorsement of such conduct by Garcia while on the job.

52. Under the doctrine of *respondeat superior*, MGM is therefore vicariously liable for Garcia's tortious conduct as covered under the preceding counts.

### Count 5: Negligent Hiring

53. MGM had a duty to its guests to exercise reasonable care and diligence as to the hiring if its employees.

54. MGM breached this duty by hiring Garcia when MGM knew or should have known Garcia was fired from his previous job for sexual harassment, sexual assault, or both.

55. Vise's sexual victimization by Garcia on Casino premises is proximately attributable to MGM's decision to hire Garcia, an individual MGM knew or should have known had a propensity to aggressive and inappropriate sexual behavior.

### Count 6: Negligent Retention and Supervision

56. MGM had a duty to its guests to exercise reasonable care and diligence in the retention and supervision of its employees.

57. MGM breached this duty by failing to terminate, discipline, or take other corrective action after MGM management knew or should have known of the aggressive and inappropriate sexual behavior Garcia regularly exhibited on the job.

58. Vise's sexual victimization by Garcia while Garcia was on the job is proximately attributable to MGM's failure to take corrective action in response to Garcia's pattern of aggressive and inappropriate sexual behavior while on the job.

*Count 7: Breach of Contract - Retaliation.*

59. Vise and MGM had an agreement for the payment of the Markers and MGM breached the agreement causing monetary damages to Vise.

*Count 8. Intentional Infliction of Emotional Distress*

(Mississippi Code Annotated section 15-1-35)

60. By negotiating the markers dated June 16, June 17, June 29 and June 30, 2018 and then referring the return of "worthless markers" to the District Attorneys for prosecution, MGM intentionally inflicted emotional distress on the Plaintiff.

*Count 9. Failure to Provide Adequate Security*

61. At all time relevant, MGM had a duty to provide reasonable security to protect its patrons, invitees and guests from foreseeable physical and emotional assaults and injury from its employees and third parties. The assaults and battery by Garcia were foreseeable, and MGM failed to provide reasonable security resulting in the physical and emotional injuries and damages to Vise.

## V.  RELIEF

WHEREFORE, the Plaintiff Jada Vise respectfully prays for the following relief:

(a)   That proper process issue and be served upon the Defendants MGM and Garcia;

(b)   That the Defendants MGM and Garcia be required to Answer or otherwise respond to this Complaint in the time and manner prescribed by law;

(c)   That a jury be empaneled to adjudicate the truth of any

disputed factual allegations;

(d) That a judgment be entered awarding the Plaintiff compensatory and punitive damages jointly and severally against the Defendants in an amount not less than $5,000,000.00; and

(e) Such other and further relief, legal and/or equitable, as should be deemed just and proper.

Respectfully submitted,

s/Patrick Ardis
Patrick M. Ardis (MS Bar #104916 )
WOLF ARDIS, P.C.
5810 Shelby Oaks Drive
Memphis, Tennessee 38134
Telephone: (901) 756-6300
Facsimile: (901) 757-1296
pardis@wolffardis.com

Bruce S. Kramer (*pro hac vice pending*)
Jacob Webster Brown (*pro hac vice pending*)
APPERSON CRUMP, PLC
6000 Poplar Avenue, Suite 150
Memphis, Tennessee 38119
Telephone: (901) 756-6300
Facsimile: (901) 757-1296
bkramer@appersoncrump.com
jbrown@appersoncrump.com